UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAMES D. SCHAEFFER                                              PLAINTIFF

V.                                          CIVIL ACTION NO. 3:14-CV-945-DPJ-FKB

WARREN COUNTY, MISSISSIPPI and
WARREN COUNTY BOARD OF SUPERVISORS                             DEFENDANTS

ORDER

This employment-retaliation case is before the Court on three post-trial motions filed by

Plaintiff James D. Schaeffer:  (1) Motion for New Trial and/or Reconsideration [68]; (2) Motion

for Reinstatement and Liquidated Damages [70]; and (3) Motion for Attorney's Fees [72].  For

the reasons that follow, the Court finds that neither a new trial nor reconsideration are warranted

but that fees should be awarded in part.

I.      Facts and Procedural History

The facts described in the Court's first post-trial Order [66] are fully incorporated herein.

In short, Plaintiff James D. Schaeffer worked for Defendant Warren County, Mississippi, as a

ferry-boat pilot.  But in 2013, Defendant Warren County Board of Supervisors accepted a

manager's recommendation to terminate Schaeffer's employment.  Aggrieved by that decision,

Schaeffer filed suit in this Court alleging age-based discrimination under the Age Discrimination

in Employment Act ("ADEA"), deprivation of overtime compensation under the Fair Labor

Standards Act ("FLSA"), and retaliation under the FLSA.  Only the FLSA retaliation claim

survived summary judgment, and it was tried to verdict.  The jury found for Schaeffer and

awarded him $114,847.53 in back pay.

Following the verdict, Defendants moved for Judgment as a Matter of Law [61].  The

Court denied the motion as to liability but found that Schaeffer failed to mitigate his damages

and thus was entitled to only a nominal award.  Under Federal Rule of Civil Procedure 50(c)(1), the Court also conditionally found that it would order remittitur and deny a new trial on damages *if* the Fifth Circuit were to vacate or reverse.  The Court ultimately entered judgment in favor of Schaeffer and against Defendants in the amount of $1.

After receiving the parties' briefs on the three pending post-trial motions, the Court held an evidentiary hearing regarding reinstatement and heard oral argument on all issues.

II.     Motion for New Trial and/or Reconsideration

A.     Motion for New Trial

Schaeffer wants a new trial on damages.  Citing the Seventh Amendment, he says in his initial memorandum that a new trial is warranted because he "does not accept the remitter [sic] offered by the Court."  Pl.'s Mem. [74] at 3.  But this misconstrues the Court's previous Order [66].  The Court did not order remittitur but, instead, granted judgment as a matter of law on damages because Schaeffer failed to mitigate.  Once that ruling was made, Rule 50(c)(1) required a "conditional[ ]" ruling on Defendants' alternative motion for remittitur or new trial.  Defendants' remittitur argument stated that if the Court found Schaeffer adequately mitigated, then the jury still miscalculated the damages.  The jury's mistake in calculating damages is not disputed, so the Court granted the alternative request for remittitur under Rule 50(c)(1), in the event the appellate court reverses the mitigation ruling.

Defendants explained all this in their response, so Schaeffer attacked the ruling from a different angle in his reply.  Now he says the Court was *in effect* imposing a remittitur because it "substituted its own evaluation of the evidence" in reducing the front-pay award to nominal

damages.  Pl.'s Mem. [79] at 2.  This argument is untimely, having been raised in reply.[1]

Even if timely raised, Schaeffer's new argument fails.  Simply put, there is a difference between lowering damages through remittitur and finding that a plaintiff is not entitled to damages.  In the Fifth Circuit, a "damage award may be [remitted] only upon a clear showing of excessiveness or upon a showing that the jury was influenced by passion or prejudice." *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995).  "A jury's award should not be disturbed unless it is entirely disproportionate to the injury sustained." *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1141 (5th Cir. 1991) (citation and quotation marks omitted).  But under Rule 50, the Court asks whether a reasonable jury would have had "a legally sufficient evidentiary basis" to support its finding.  Fed. R. Civ. P. 50(a)(1).  In making that determination, the Court accepts the facts in the light most favorable to the verdict.  *Resolution Tr. Corp. v. Cramer*, 6 F.3d 1102, 1109 (5th Cir. 1993).  Here, the Court did not find that the back-pay award was excessive or disproportionate, nor did it substitute its judgment for the jury's.  It instead applied the Rule 50 standards to Defendants' affirmative defense and held that back pay was precluded as a matter of law.  Schaeffer is not entitled to a new trial on these arguments.

B.    Motion for Reconsideration

Schaeffer also asks the Court to reconsider its finding that Defendants affirmatively proved a failure to mitigate damages.  Reconsideration "is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).  Accordingly, "a motion to alter or amend the judgment under Rule 59(e) must clearly establish

---

[1] As noted in previous orders, the Court has been frustrated since the Rule 56 motion by the number of delinquent arguments.  That frustration led to a frank conversation with the parties before Defendants' anticipated Rule 50(b) motion.  The Court plainly stated that the parties should adequately address the issues in their anticipated briefs.  Despite that warning, Schaeffer now raises arguments seeking reconsideration that he could have raised before judgment.

either a manifest error of law or fact or must present newly discovered evidence and cannot be

used to raise arguments which could, and should, have been made before the judgment issued."

*Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003) (citations and internal quotation

marks omitted).  Absent new evidence or a manifest error of law or fact, a Rule 59(e) motion

should not be used to merely "rehash arguments which have already been raised before th[e]

court."  *Naquin v. Elevating Boats, L.L.C.*, 817 F.3d 235, 240 n.4 (5th Cir. 2016) (internal

quotation marks omitted).

Schaeffer fails to meet these standards.  As detailed in the Court's post-trial Order [66],

plaintiffs "ha[ve] a duty to mitigate [back-pay] damages by using reasonable diligence to obtain

substantially equivalent employment."  *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1045 (5th

Cir. 1998) (citing *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990)).  "Substantially

equivalent employment is that employment which affords virtually identical promotional

opportunities, compensation, job responsibilities, working conditions, and status as the position

from which the . . . claimant has been discriminatorily terminated."  *Sellers*, 902 F.2d at 1193

(citation and internal quotation marks omitted).  If he or she has not engaged in such an effort,

then the amount that could have been earned will reduce the back-pay amount.  *Id.*

1.     The Burden of Proof

The parties first dispute whether Defendants hold the burden of showing there was

substantially equivalent employment available.  In *Sellers v. Delgado College*, the court held that

employers need not make that showing if the plaintiff failed to make a reasonable effort to find

work.  902 F.2d at 1193.  And on this record, the Court agrees with Defendants that Schaeffer

failed to make a reasonable effort.  But the problem is that *Sellers* was decided after *Sparks v.

Griffin*, where another panel from the Fifth Circuit concluded that the employer must show

4

availability even when the plaintiff fails to make reasonable efforts to seek employment.  460 F.2d 433, 443 (5th Cir. 1972).

Despite *Sparks*, the Fifth Circuit has followed *Sellers* since it was decided.  *See, e.g.*, *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003).  But district courts have questioned whether it should.  And for the most part, those courts have concluded that *Sparks* controls under the rule of orderliness.  *See Newcomb v. Corinth Sch. Dist.*, No. 1:12-CV-00204, 2015 WL 1505839, at *7 (N.D. Miss. Mar. 31, 2015), *appeal dismissed*, No. 15-60313 (5th Cir. June 5, 2015); *Buckingham v. Booz Allen Hamilton, Inc.*, 64 F. Supp. 3d 981, 985 (S.D. Tex. 2014); *Little v. Tech. Specialty Prods. LLC*, No. 4:11-CV-717, 2014 WL 1116895, at *3 (E.D. Tex. Mar. 18, 2014); *Paulissen v. MEI Techs., Inc.*, 942 F. Supp. 2d 658, 677 (S.D. Tex. 2013); *Starr v. Oceaneering Int'l, Inc.*, No. 4:09-CV-0204, 2010 WL 644445, at *12 n.8 (S.D. Tex. Feb. 18, 2010).  *But see Rybar v. Corp. Mgmt., Inc.*, No. 1:14-CV-242-KS-MTP, 2015 WL 12912342, at *2 (S.D. Miss. July 16, 2015) (acknowledging rule of orderliness but concluding that court should follow more recent Fifth Circuit opinions after *Sellers*).

At some point, the Fifth Circuit will likely resolve this dispute.  If it decides to continue following *Sellers*, then it bolsters the mitigation ruling in this case.  But until that happens, this Court will follow the rule of orderliness and apply the earlier-decided *Sparks* decision.  *See Miles-Hickman v. David Powers Homes, Inc.*, 613 F. Supp. 2d 872, 887 & n.22 (S.D. Tex. 2009) (Atlas, J.) (applying *Sparks* under rule of orderliness).[2]

---

[2] The parties did not dispute this point in their Rule 50 briefs, so perhaps it is too late.  That said, the Court sided with Schaeffer on this issue at trial when drafting the jury instructions.  *See* Jury Instrs. [63-2] at 9.  And the Court had *Sparks* in mind when it granted Defendants' Rule 50(b) motion, holding that substantially equivalent work was available as a matter of law.  *See* Order [66] at 13.

2.      The Merits

Turning then to the evidence, the parties previously briefed the mitigation issue when

Defendants raised it in their Rule 50(b) motion.  And based on *those arguments* and the evidence

presented at trial, the Court found that a reasonable jury would lack a legally sufficient

evidentiary basis to find for Schaeffer on Defendants' mitigation defense.

As detailed in the Court's first Order on this issue [66], Schaeffer immediately received

but rejected two offers for better-paying pilot positions in Warren County.  One was from Smith

Towing, but the Court assumed that a jury question existed as to whether that job was

"substantially equivalent" to the job Schaeffer lost.  The other offer came from Diamond Point

Land and Barge Company ("Diamond Point").  The only evidence explaining the Diamond Point

job came during Schaeffer's cross-examination testimony, when he conceded that the offer was

for more money to do "virtually the same job" as the one he lost.  Tr. [63-1] at 82−83.  The Court

entered judgment for Defendants on the mitigation issue.

Schaeffer now offers something old and something new in his motion for reconsideration,

pursuing three primary arguments.  First, Schaeffer again says the Diamond Point job was not

substantially equivalent because it was seasonal, but this time he claims to have "new" evidence

to support his contention.  *See* Pl.'s Mem. [74] at 3; Pl.'s Reply [79] at 3.  Schaefer has not

shown that this "new" evidence was previously unavailable.  It is therefore too late, even

assuming Schaeffer's characterization of that evidence is correct.

Next, he faults the Court for failing to draw all reasonable inferences in his favor.  More

specifically, Schaeffer says a reasonable jury could have found that he simply misspoke when he

agreed that the jobs were "virtually the same."  Pl.'s Mem. [74] at 4–5 (citing jury instruction on

witness credibility [63-2] at 3).  But Schaeffer never made this argument in his Rule 50(b)

6

response, so it is untimely.  *See Rosenzweig*, 332 F.3d at 863 (holding that motions for reconsideration "cannot be used to raise arguments which could, and should, have been made before the judgment issued").  Moreover, he never says that he actually did misspeak.  Had that been the case, he was free to correct his testimony during re-direct examination, yet he said nothing.  And as a result, there is no record evidence from which a jury might reasonably conclude that he misspoke when describing the job offer he rejected.  In fact, as addressed next, Schaeffer's full testimony cuts against this delinquent argument.

Schaeffer's final argument requires more attention because it has evolved over time.  As noted, he argued in his initial Rule 50(b) response that the two job offers failed to meet the substantial-equivalence factors because the work was seasonal and he had benefits with the County.  Pl.'s Mem. [64] at 12.  His motion for reconsideration looks to the substantial-equivalence factors but in a different way.  There, he begins by quoting the jury instruction on mitigation, and then says that while it may be "undisputed that Defendant[s] provided evidence that compensation and job responsibilities [were] virtually identical, . . . Defendant[s] never offered evidence to show there were [the] same promotional opportunities, working conditions, and status."  Pl.'s Mem. [74] at 5.  Despite this argument, his reply reverts back to the seasonal work issue.  Pl.'s Reply [79] at 3−4.

Given these differences, the Court asked counsel during the hearing to better explain his position and whether he was equating the substantial-equivalence factors to essential elements.  After some vacillation, counsel eventually noted that there is no clear answer in the Fifth Circuit whether the factors for substantial equivalence are essential elements of the mitigation defense.  Accordingly, his argument was that the jury instructions state what is required and a reasonable jury could conclude that Defendants did not meet their burden.

As an initial point, Schaeffer never mentioned this jury instruction in his Rule 50(b) response, so it comes too late in his motion for reconsideration. *See Rosenzweig*, 332 F.3d at 863. Likewise, the post-judgment argument that Defendants failed to offer evidence regarding "promotional opportunities, working conditions, and status," Pl.'s Mem. [74] at 5, was not apparent from the Rule 50(b) response.

Nevertheless, the jury instruction tracked Fifth Circuit law. *See Sellers*, 902 F.2d at 1193 (listing the factors for substantial equivalence). And even assuming Schaeffer is not now making new arguments regarding those factors, Defendants met their burden as a matter of law. To begin, Schaeffer now concedes two of the factors, acknowledging that it is "undisputed that Defendant[s] provided evidence that compensation and job responsibilities [were] virtually identical." Pl.'s Mem. [74] at 5.[3]

As for the other factors, Schaeffer does not acknowledge the full scope of his testimony regarding the Diamond Point job. First, he testified that the Diamond Point job paid a good bit more than his County job. Tr. [63-1] at 35, 82−83. Second, Schaeffer agreed that Diamond Point "offered [him] virtually the same job" as the one he lost, *id.* at 82, and that Diamond Point "operate[s] a ferry carrying hunters and loggers back and forth across the river just like Warren County does," *id.* at 83. In other words, he would be doing the exact same job but for more

---

[3] Though he does not make this argument in his two briefs supporting reconsideration, Schaeffer's initial Rule 50(b) response mentioned that he had other benefits while working for the County. To the extent he was arguing *then* that compensation between the two jobs was different, the only evidence in the record comparing compensation conclusively established that the Diamond Point job paid more. *See* Tr. [63-1] at 35, 82−83. So even if these factors are treated like elements, Defendants met their burden as to "compensation." If Schaeffer wanted to attack that evidence by showing the raise would not offset the loss of other benefits, then he could have offered his own evidence in response. But as the record stood, there was no evidence regarding the Diamond Point benefits, so the jury would have had to assume facts not in evidence to reject Defendants' proof. In any event, Schaeffer appears to have abandoned this argument in his post-judgment briefs.

money.  Absent record evidence of any distinguishing facts, Schaeffer's own testimony conclusively establishes that the responsibilities, working conditions, and status were the same—assuming these factors are tantamount to essential elements.

That leaves only the promotional-opportunities factor.  Admittedly, there was no direct testimony comparing the promotional opportunities for the two jobs, but Schaeffer testified that he worked his entire seven years for the County as a pilot, *id.* at 5–6, which is essentially the same job he had done for various employers since 1992, *id.* at 3.  And it was also the job Diamond Point offered him.  *Id.* at 82.  On this record, the jury lacked a sufficient evidentiary basis to say the jobs were not substantially equivalent based on differences in promotional opportunities.

To conclude, "claimants are not required to take lesser or dissimilar work [or] a demotion or a demeaning position."  *Floca v. Homcare Health Servs., Inc.*, 845 F.2d 108, 112 (5th Cir. 1988) (citation omitted).  The Diamond Point job was none of those things.  And it is hard to imagine how the duty to mitigate would ever apply if not when the new position pays more money for "virtually the same" job.  Tr. [63-1] at 82−83.  While Schaeffer now claims there is evidence to the contrary, the argument is too little too late.  Schaeffer's motion for reconsideration is substantively and procedurally deficient and therefore will be denied.[4]

III.    Motion for Reinstatement and Liquidated Damages

   A.    Reinstatement

Schaeffer says that, as the prevailing party, he is entitled to reinstatement to his former

---

[4] It is worth noting that even assuming he mitigated his damages, the jury overcompensated Schaeffer by failing to follow the jury instruction to reduce his back-pay award by amounts he otherwise received.  By Schaeffer's own estimate, the jury gave him nearly $40,000 too much. *See* Pl.'s Mem. [64] at 13.

pilot position with Warren County.  And he is correct that reinstatement is a preferred remedy for an FLSA retaliation claim.  *See Pineda v. JTCH Apartments, L.L.C.*, 843 F.3d 1062, 1064 (5th Cir. 2016) (quoting 29 U.S.C. § 216(b)).

In determining whether reinstatement is appropriate, the Fifth Circuit considers a number of factors, including, (1) "whether positions now exist comparable to the plaintiff's former position," (2) "whether reinstatement would require an employer to displace an existing employee," (3) "whether the plaintiff has changed careers," and (4) "whether animosity exists between the plaintiff and his former employer."  *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 489 (5th Cir. 2007) (citations omitted).

Here, reinstatement is not feasible.  To begin, Schaeffer's position has been filled, and "except under extraordinary circumstances . . . innocent incumbents may not be displaced."  *Id.* Schaeffer acknowledges this reality, but offers two arguments in response.

First, he says—without authority—that this case presents one of those extraordinary circumstances because the mitigation ruling precludes front pay, which is the typical substitute when reinstatement is unavailable.  But the Fifth Circuit has at least suggested that it does not. In *Hansard v. Pepsi-Cola Metropolitan Bottling Co., Inc.*, the Fifth Circuit remanded the case for a determination whether reinstatement was possible and whether the plaintiff failed to mitigate. 865 F.2d 1461, 1470 (5th Cir. 1989).  In doing so, the court stated that if the district court "finds on remand that [Plaintiff] cannot be reinstated, the court must consider his failure to mitigate his damages in determining the extent to which, *if at all*, front pay is appropriate."  *Id.*; *see also Jackson v. Host Int'l, Inc.*, 426 F. App'x 215, 223 (5th Cir. 2011) (noting in *dicta* that front-pay awarded in lieu of reinstatement "should be reduced by potential future earnings"); *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991) (observing in case where trial

court found sufficient mitigation: "Front pay is usually appropriate when a plaintiff is discharged in violation of ADEA and not reinstated by the court. Front pay may be denied or reduced when the employee fails to mitigate damages by seeking other employment"); *Anderson v. City of McComb*, No. 5:13-CV-263-TSL-MTP, 2015 WL 11439036, at *1 (S.D. Miss. Mar. 19, 2015) ("[T]he court concludes that reinstatement is not feasible and that front pay is not appropriate in light of plaintiff's failure to mitigate.").

Finding no extraordinary circumstances in this case may seem harsh because the purpose of equitable remedies is to make the prevailing plaintiff whole. But it also seems inequitable to bump an innocent County employee on the argument that Schaeffer's own failure to mitigate caused an extraordinary circumstance. Balancing these equities tips in the incumbent's favor.

Second, Schaeffer alternatively says that if extraordinary circumstances do not exist to oust the incumbent, then he should receive the next available position and front pay until he is reinstated. Pl.'s Reply [78] at 1−2. But Schaeffer's motion for reconsideration never mentions this relief or any reference to front pay. *See* Pl.'s Mot. [70]. Instead, he made these demands in his reply memorandum. Under Uniform Local Rule 7(b), a party cannot make a claim for relief in a legal memorandum, and, as stated before, this Court does not consider issues raised for the first time in reply.

Even assuming this remedy had been timely sought, it lacks merit. Starting with the prospective-reinstatement issue, reinstatement is not feasible. As noted above, availability is just one consideration. *Palasota*, 499 F.3d at 489. Reinstatement may also be denied if animosity exists between the parties. *Id.* Here, Schaeffer suggests that his main conflicts were with now-departed department head Buddy Poole. He therefore sees no obstacle to reinstatement. But reinstatement may become non-viable due to "continuing hostility between the plaintiff and the

11

employer *or* its workers." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001) (emphasis added). And here, Schaeffer still has issues with his employer (the County) and his immediate supervisor Earl Carson.

As for the County, Richard George, the President of the Warren County Board of Supervisors, testified in clear—if not hostile—terms that neither he nor the rest of the board of supervisors trusts Schaeffer or would consider him for re-hire. He went so far as to say that given the choice between rehiring Schaeffer or shutting down the ferry, he would shut it down. Given the tone of that testimony, the Court makes the credibility determination that George holds genuine animosity toward Schaeffer.

Earl Carson would be Schaeffer's immediate supervisor upon return. Right or wrong, he believes Schaeffer lied to him and about him. Notably, he does not appreciate Schaeffer calling him a liar during the trial. Carson also believes Schaeffer would not abide by his instructions on the job, and he firmly testified that he does not want Schaeffer to return. Carson did state that he would treat Schaeffer fairly, but his testimony established an unacceptably high level of animosity.

It should be noted that Schaeffer's disagreements with his co-workers and supervisors was not disputed at trial. For example, Schaeffer testified that during the pivotal October 2013 meeting with his department head, Poole, Schaeffer complained about a number of things and could see that Poole "was intimidated. He actually – I could see it. He was angry." Tr. [63-1] at 51. He also admitted accusing Poole of being too scared to confront the board of supervisors. *Id.* As a result, Schaeffer said Poole "was very much intimidated and offended." *Id.* Poole confirmed that point, calling Schaeffer "one of these type people that steady come in and steady complaining about several things because it's not going his way. He wants to change things to

12

suit him." *Id.* at 137.   And that is certainly how the other pilot, David Brewer, viewed things.
Brewer gave bitter and sometimes emotional testimony explaining why he felt Schaeffer had
taken advantage of him.  *See id.* at 107–08.  While Poole and Brewer are now gone, these
circumstances bolster the concerns George and Carson expressed.

It is also apparent that this protracted and contentious litigation has contributed to the
animosity.  While reading body language and tone can be subjective, the undersigned observed
palpable animosity before, during, and after trial.  These were not the typical hurt feelings often
associated with litigation.  *See Weaver v. Amoco Prod. Co.*, 95 F.3d 52 (5th Cir. 1996) (affirming
finding that reinstatement was not feasible where parties' animosity exceeded the "level that
commonly arises between opposing parties throughout the litigation process").  Emotions ran hot
in the Court's presence from start to finish, and it does not appear that these parties can function
in a normal employer/employee capacity.  *See Feldman v. Phila. Hous. Auth.*, 43 F.3d 823, 832
(3d Cir. 1994) ("The record contains ample evidence of the hostility that was caused by this
litigation.").

All of this is at least as significant as the animosity found in *Palasota v. Haggar Clothing
Co.*, where the Fifth Circuit overruled the trial court's finding that animosity would not prevent
reinstatement.  499 F.3d at 489.  There, the court held:

> [T]he record suggests some lingering animosity between the parties:  Palasota
> alleges that Haggar's management attempted to black-ball him in the industry;
> Haggar alleges that Palasota falsified expense reports while employed at Haggar,
> an offense for which other Haggar employees have allegedly been terminated.
>
>  For these reasons, we reverse the district court's award of reinstatement and
> interim front pay and render judgment for Haggar and against Palasota on these
> issues.

*Id.*  The animosity between Schaeffer, his employer, and Carson makes reinstatement
infeasible.

13

The only remaining issue is front pay.  As stated, Schaeffer now requests front pay until

he is eventually reinstated.  *See* Pl.'s Reply [68] ¶ 2.  Even if this request had been timely raised,

it would be denied.  First, the Court has now denied the reinstatement to which the front-pay

claim was linked.  Second, as counsel correctly conceded during the hearing, front pay is

generally not available when a plaintiff fails to mitigate.  *See Hooker v. Victoria's Secret Stores,*

*Inc.*, No. 01-60016, 2001 WL 1692436, at *7 (5th Cir. Nov. 21, 2001) (affirming denial of front

pay for failure to mitigate) (citing *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 490 (5th Cir. 2001));

*see also Hansard*, 865 F.2d at 1470.  The front-pay claim is therefore meritless if not waived.

For these reasons, the Court denies reinstatement and the alternative remedies Schaeffer

raised in his reply.

B.      Liquidated Damages

Schaeffer also requests that "if the Court alters its Opinion [on] Remittitur, . . . liquidated

damages be awarded."  Pl.'s Mem. [71] at 1.  The Court has made no such alteration, and

liquidated damages are not available absent back pay.  *See* 29 U.S.C. § 216(b).  The motion for

reinstatement and liquidated damages is denied.

IV.    Motion for Attorney's Fees

Schaeffer initially brought an ADEA claim, an FLSA overtime-compensation claim, and

an FLSA retaliation claim.  Both the ADEA and the FLSA provide for fee awards, but they do so

in different ways.

The ADEA incorporates 42 U.S.C. § 1988, which states:  "In any action or proceeding to

enforce a provision of sections [of the ADEA] the court, *in its discretion*, may allow the

*prevailing party*, other than the United States, a reasonable attorney's fee as part of the costs."

42 U.S.C. § 1988 (emphasis added).  By contrast, § 216(b) of the FLSA states that when an

employer violates the FLSA, "[t]he court in such action *shall*, in addition to *any* judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b) (emphasis added); *see Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).

A.      Prevailing Party Status

There is no dispute that Schaeffer was not the prevailing party for his ADEA claim, so he is not entitled to attorney's fees associated with that claim.  Similarly, his FLSA overtime claim failed, so he received no judgment on that claim and may not recover fees.  Schaeffer therefore concedes that as a threshold issue, that the Court must reduce fees to account for these failed claims.[5]

Schaeffer suggests that the Court can account for the two failed claims by merely reducing his fees before the February 2, 2016 summary-judgment order by two-thirds.  After that date, all fees related to the FLSA retaliation claim for which he obtained a judgment.  While the Court agrees that the fees before and after February 2 must be treated differently, it would be inaccurate to merely reduce the fees on a pro rata basis.  *See Hensley v. Eckerhart*, 461 U.S. 424, 435 n.11 (1983) (agreeing that courts should not use "mathematical approach comparing the total number of issues in the case with those actually prevailed upon") (internal quotation marks omitted).

Looking at the time sheets, it is apparent that the nine (9) hours spent responding to the summary-judgment motion related exclusively to the failed claims because the motion did not

---

[5] This seems to be the correct approach, especially as to the ADEA claim because Schaeffer is not entitled to fees under § 1988.  But there is an argument that as to the FLSA claim, the Court should first calculate the lodestar amount and then make a reduction for the lack of success. Ultimately, the distinction matters not.  As discussed below, the Court does not double count the *Johnson* factors, so the reductions made here would have otherwise been made under *Johnson*.

address the FLSA retaliation claim.  None of that time is recoverable.

But beyond that, things get muddled.  None of the other time entries before February 2 are clearly dedicated to one claim over the others, and neither party attempts to parse the entries. Experience suggests that many of these activities promoted all three claims.  For example, there are expenditures related to Schaeffer's deposition.  And while there may have been claim-specific questions, it seems logical that most of the time spent scheduling, preparing for, and defending the deposition would generally apply to all claims.  So the question becomes how much of that time was attributable to the FLSA retaliation claim.  Looking at the case as a whole and the nature of the FLSA retaliation claim—regarding a demand for $49.65 in overtime pay— the other claims were the focus.  Indeed, the FLSA retaliation claim survived summary judgment because Defendants overlooked it.

Absent more information, the Court concludes that the fees for the remaining work before February 2 should be reduced by 75%.  As such, Schaeffer received a judgment in his favor related to 25% of the fees before February 2, 2016 (other than the summary-judgment response) and 100% of the fees after that date.

B.      Calculating Fees

The next question is how to calculate fees related to the successful claim.   Section 216(b) is different from § 1988.  Under § 1988, the trial court has discretion to award fees to the "prevailing party."  *Id.*  Section 216(b) does not use the term prevailing party and instead states that if "any" judgment is entered for the plaintiff, the court "shall" award "reasonable fees."  29 U.S.C. § 216(b).

The Court raised this distinction during the post-trial hearing, and it appeared that counsel for both sides agreed the FLSA remedies statute is different.  They further acknowledged that

16

because Schaeffer received a judgment in his favor on liability, the Court is required to award

reasonable fees.   The Court agrees.   *See Riddle v. Tex-Fin, Inc.*, No. H-08-3121, 2011 WL

1103033, at *11 (S.D. Tex. Mar. 22, 2011) (Rosenthal, J.) (examining fee calculations under

§ 216(b)).

To determine a reasonable fee amount as to the successful claim, the Fifth Circuit has

frequently applied the following approach:

> The calculation of attorney's fees involves a well-established process.  First, the
> court calculates a "lodestar" fee by multiplying the reasonable number of hours
> expended on the case by the reasonable hourly rates for the participating lawyers.
> *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).  The
> court then considers whether the lodestar figure should be adjusted upward or
> downward depending on the circumstances of the case.  *Id.*  In making a lodestar
> adjustment the court should look to twelve factors, known as the *Johnson* factors,
> after *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

*Migis*, 135 F.3d at 1047.

1.      Lodestar Fee

To determine the lodestar amount, the Court "[m]ultipl[ies] the number of hours

reasonably spent on the case by an appropriate hourly rate in the community for such work."

*Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006).  The movant has

the burden of showing that the hours billed are reasonable and the billing attorneys exercised

"billing judgment."  *Id.*  Here, the time spent was modest and reasonable, so the Court looks at

the rates.

Schaeffer seeks to recover fees at a rate of $375 per hour for attorney Louis Watson and

$275 per hour for attorney Nick Norris.  He says these fees are reasonable, and he supports this

contention with affidavits from Watson and Norris.  He then offers an affidavit from Stephen A.

Brandon, an experienced practitioner familiar with the Mississippi legal market and both

17

attorneys.  All affiants swear that the requested rates are reasonable in the Southern District of Mississippi.

As an initial matter, Defendants say that Brandon's affidavit is insufficiently specific to determine the community rate.  That may be correct, but the affidavit does not stand alone. Schaeffer offered it in addition to the Norris and Watson affidavits *and* decisions in other cases regarding their rates.  *See Wheeler v. Mental Health & Mental Retardation Auth. of Harris Cty., Tex.*, 752 F.2d 1063, 1073 (5th Cir. 1985) (reversing trial court's undervaluation of appropriate rate and noting that movant must "produce satisfactory evidence, *in addition to her attorney's affidavit*, that the requested rates are in line with those prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience and reputation").

More generally, Defendants challenge the reasonableness of the rates charged while failing to say what they believe the reasonable rates should be.  Instead, they "commit to the court's knowledge and experience" their objection and attach a "2014 Economic Survey" published by the Mississippi Bar.  Defs.' Resp. [77] at 4; *see* Survey [77-1].  Notably, that survey is for all attorneys across the entire state.  It is not broken down by practice areas, geographic location, years of experience, skill, or reputation.  It therefore shares some of the deficiencies noted in *Wheeler*, where the Fifth Circuit criticized the trial court for using decisions from rural courts rather than those in metropolitan areas.  752 F.2d at 1073.

In any event, "trial courts are considered experts as to the reasonableness of attorney's fees."  *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).  And Watson and Norris are no strangers to this Court.  As their affidavits state, Watson has practiced employment law for over 25 years and Norris has practiced for over 12.  They have represented

scores of clients and are probably the most active lawyers on the plaintiffs' side of employment law in the Jackson metropolitan area.

As a result, this district has considered their rates over the years.  In 2011, Judge Henry T. Wingate approved fee requests of $250 an hour for Watson and $200 an hour for Norris. *Alexander v. City of Jackson, Miss.*, No. 3:04-CV-614 HTW-LRA, 2011 WL 1059293, at *14 (S.D. Miss. Mar. 21, 2011), *aff'd*, 456 F. App'x 397 (5th Cir. 2011).  Two years later, Judge Carlton Reeves tried an employment case similar to this one.  There, Watson sought $300 an hour and Norris sought $250.  *Brown v. Miss. Dep't of Health*, No. 3:11-CV-146-CWR-FKB, 2013 WL 12128785, at *3 (S.D. Miss. Mar. 5, 2013).  The court granted Watson's request noting that "[a]n appropriate rate for a partner like Watson . . . range[d] between $200 and $350 an hour." *Id.* at *3−4 (collecting cases).  But Judge Reeves cut Norris's rate to $235 because he had barely more than associate-level experience at that time.  *Id.*

Fast forward three more years to 2016, and the undersigned allowed Watson a requested $375 an hour in *Perez v. Bruister*, No. 3:13-CV-1001-DPJ-FKB, 2015 WL 5712883, at *6 (S.D. Miss. Sept. 29, 2015), *aff'd*, 653 F. App'x 811 (5th Cir. 2016).  But in that case, the defendants did not oppose Watson's rate, and the case was a multi-million-dollar ERISA dispute that took years to litigate and three weeks to try.  Watson's rate in *Bruister* was well below that of the regional and national attorneys who tried the case with him.

In a simple case like this, it is more appropriate to approve something slightly more than the $300 an hour Judge Reeves awarded Watson in 2013.  So his hourly rate will be $325 per hour.  As for Norris, he has gained considerable experience since Judge Reeves last considered his rate, and Norris handled the bulk of this litigation.  The Court's own experience with this attorney suggests that $275 an hour is now appropriate.  *See Mosley v. Nordquist*, No. 3:13-CV-

161-LG-JCG, 2016 WL 5794480, at *7 (S.D. Miss. Sept. 30, 2016) (holding that rate for an "of counsel" attorney practicing for 9 years in the Northern Division of the Southern District of Mississippi was $275) (citing *U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co.*, No. 1:06-CV-433-HSO-RHW, 2014 WL 691500, at *15 (S.D. Miss. Feb. 21, 2014)).

In sum, Norris and Watson's significant experience in handling employment matters in this market, and the nature of this litigation, support hourly rates of $325 and $275.  And having reviewed the billing records, it appears that they were judicious with their time.  The lodestar amount for the successful claim is $1,708.44 before February 2, 2016, and $43,097.50 after that date, totaling $44,805.94.

B.    *Johnson* Factors

Having determined the lodestar amount, the Court must now consider whether that amount should be increased or decreased based on the following *Johnson* factors:

> (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Migis*, 135 F.3d at 1047 (citing *Johnson*, 488 F.2d at 717–19).

The Court must "explain with a reasonable degree of specificity the findings and reasons upon which the award is based, including an indication of how each of the *Johnson* factors was applied." *Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990).  But the Fifth Circuit Court of Appeals has narrowed the scope of this review.  Notably, the trial court must be careful "not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments." *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993) (citing

*Von Clark*, 916 F.2d at 258); *see also Migis*, 135 F.3d at 1047. As a result, the time and labor, customary fee, and experience and reputation of counsel have all been accounted for. Moreover, whether the fee is fixed or contingent is no longer a proper consideration. *See Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 772 (5th Cir. 1996) (citing *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992)).

As for the rest, the result obtained is a major concern. As noted *supra*, the Court has already reduced the award to reflect the complete lack of success on the ADEA and FLSA overtime claims. As to the FLSA retaliation claim, Defendants say that because Schaeffer received only nominal damages, he is not entitled to any attorney's fees at all. Defs.' Mem. [77] at 8–9. In support, they point to *Allstate Insurance Co. v. Plambeck*, a RICO case where the Fifth Circuit held, "[I]f a plaintiff recovers only nominal damages, the proper fee usually is none at all, even though the plaintiff has won his case." 802 F.3d 665, 678 (5th Cir. 2015).

The *dicta* from *Plambeck* does appear to support Defendants' argument, but it is based on *Farrar v. Hobby*, where the Supreme Court applied § 1988, not § 216(b). 506 U.S. 103, 115 (1992). In *Farrar*, the Court noted that a party can be a prevailing party under § 1988 even if he or she receives nominal damages. *Id.* at 114. But in most civil-rights cases, an award of nominal damages may make any fee award unreasonable. *Id.* at 114–15.

There is no dispute Schaeffer did not receive the result he wanted. Regardless, he proved every element of his claim and received a judgment in his favor under the FLSA. As noted, an award of reasonable fees is mandatory under § 216(b) if the plaintiff receives "any" judgment. Other courts have therefore found that a fee award is appropriate in cases where only nominal damages are awarded but the plaintiff proves every essential element of his FLSA claim. *See,*

*e.g.*, *Fulkerson v. Yaskawa Am., Inc.*, No. 3:13-CV-130, 2015 WL 6408120, at *4 (S.D. Ohio Oct. 23, 2015).  So Schaeffer is entitled to fees.

But that does not mean that lack of success is irrelevant.  The Court still considers this and other *Johnson* factors in the FLSA context.  *See Riddle*, 2011 WL 1103033, at *11.  Here, Schaeffer asked for a sizable award in back pay and emotional distress, yet he received nominal damages.  He likewise sought reinstatement but was denied.  So a major deduction is necessary.

Other *Johnson* factors soften this blow to some extent.  Most notably, the case was clearly "undesirable" and required skill and a substantial time investment to obtain a judgment vindicating Schaeffer's position.  To begin, the failure to mitigate was known from the beginning.  *See* Defs.' Answer [6] at 5.  Those facts made any monetary award unlikely.  In addition, the age-discrimination and FLSA overtime claims had obvious flaws and were dismissed.  Had Defendants addressed the surviving FLSA retaliation claim in their Rule 56 motion, it may have met the same fate.  But once the FLSA retaliation claim made it to trial, counsel must be commended for convincing a jury that a complaint over $49.65 in alleged overtime pay was the "but-for" cause of the termination decision.  And as doubtful as that claim may have appeared in the beginning, they successfully defended it through the post-trial motions.  These *Johnson* factors therefore further militate against a complete denial of fees.

During the post-trial hearing, the parties acknowledged that beyond calculating fees and rates, the decisions can become somewhat arbitrary and depend on the judgment of the Court.  Here, given the near total lack of tangible success, the fee award for time spent on this claim must be cut by 80%.

Accordingly, the fees are calculated as follows:

| | | |
|---|---|---|
| Total Pre-February 2, 2016 fees (less 9 summary-judgment hours) | = | $6,833.75 |
| Proportion of successful claim | x | .25 |
| Pre-February 2, 2016 FLSA-retaliation fees | = | $1,708.44 |
| Post-February 2, 2016 fees: | + | $43,097.50 |
| Lodestar amount | = | $44,805.94 |
| *Johnson* adjustment | x | .2 |
| | = | $8,961.19 |

V.     Conclusion

The Court has considered all the parties' arguments. Those not specifically addressed would not change the outcome. For the foregoing reasons, Plaintiff's Motion for New Trial and/or Reconsideration [68] and Motion for Reinstatement and Liquidated Damages [70] are denied. But his Motion for Attorney's Fees [72] is granted in part. Plaintiff is awarded fees in the amount $8,961.19.

**SO ORDERED AND ADJUDGED** this the 27th day of November, 2017.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE